UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTOPHER DELBRIDGE, and
KEENAN DELBRIDGE,

      Plaintiffs,

v.                                              Case No. 12-cv-11510
                                                Paul D. Borman
UNITED STATES OF AMERICA, and        United States District Judge
ALVIN DAVIS,

      Defendants.
_____/

## OPINION AND ORDER
## GRANTING DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS
## (Dkt. No. 9)

This action is brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq*. Kristopher Delbridge and Keenan Delbridge ("Plaintiffs") filed the Complaint in this matter on April 4, 2012. (Dkt. No. 1.) Defendant Alvin Davis filed an Answer *in pro per* on July 24, 2012.[1] (Dkt. No. 7.) On September 5, 2012, Defendant United States of America filed a Motion to Dismiss. (Dkt. No. 9.) Plaintiffs filed a response on October 12, 2012, and Defendant United States filed a reply on November 5, 2012. (Dkt. Nos. 12 and 14.) On April 15, 2013, Defendant filed a Supplemental Brief in Support of Its Motion to Dismiss. (Dkt. No. 19.) The Court held a hearing on July 25, 2013.

For the reasons stated below, the Court will **GRANT** Defendant's motion and **DISMISS**

---

[1] Defendant Davis attached to his Answer a letter from United States Immigration and Customs Enforcement, dated July 3, 2012, denying Davis's request for Department of Justice representation in this matter. (Def. Davis's Ans., Pg ID 28.)

1

Defendant United States of America for lack of subject-matter jurisdiction.

## I. BACKGROUND

Defendant Davis was formerly employed as a Supervisory Detention and Deportation Officer ("SDDO") with Immigration and Customs Enforcement ("ICE"), a subdivision of the United States Department of Homeland Security. Defendant Davis's duties as a SDDO involved supervising a team of ICE officers as they sought to obtain removal orders for aliens on the "non-detained docket." Because Defendant Davis worked on the "non-detained docket," he was generally not involved with investigations involving the location and detention of at-large aliens. However, the SDDO job description noted that the SDDO would meet with "personal contacts," typically "attorneys; contractors; or representatives of professional organizations, the news media, or public action groups[,]" for the purpose of "influenc[ing], motivat[ing], interrogat[ing], or control[ling] persons or groups." (Def.'s Mot. to Dismiss, Ex. 3, SDDO Position Description.) The SDDO job description also included the following among applicable working conditions: "Make arrests, confront multiple suspects, secure scene, sometimes with no backup . . . ." (*Id.*) Accordingly, Defendant Davis was issued a Sig Sauer P229 .40 semiautomatic pistol in connection with his employment, which he was authorized to carry at all times, even when he was not working. Defendant Davis was also provided with a government-owned 2008 Chevrolet Tahoe for use in connection with his official duties as a SDDO.

On May 20, 2009, Defendant Davis's mother's home was burglarized. A desktop computer and a VCR/DVD combo device were stolen from the home.

On May 23, 2009, while he was off-duty, Defendant Davis approached Plaintiff Keenan Delbridge, brandished his government-owned firearm, and began questioning Plaintiff Keenan

Delbridge about the May 20, 2009 burglary of Defendant's mother's home. Defendant Davis allegedly told Plaintiff Keenan Delbridge "that if he knew who committed the burglary . . . and did not tell [Defendant Davis], there would be repercussions from [Defendant Davis's] staff." (Pilat Decl., Ex. C, Notice of Proposed Indefinite Suspension at 1.) Later on May 23, 2009, Defendant Davis again approached Plaintiff Keenan Delbridge, again brandishing his government-owned firearm, and "placed the barrel of [his] gun inside [Plaintiff Keenan Delbridge's] mouth and demanded that he tell [Defendant] who broke into [his] mother's home." (*Id*. at 2.) Defendant Davis then forced Plaintiff Keenan Delbridge into the rear seat of Defendant's government-owned vehicle and demanded that Plaintiff Keenan Delbridge tell Defendant where "Dellano" was. (*Id*.) Defendant then "struck [Plaintiff] Keenan [Delbridge] in the mouth with the gun before ordering him out of the car and telling him to run." (*Id*.) As Plaintiff Keenan Delbridge was running away from Defendant Davis's vehicle, Defendant Davis discharged a shot from his handgun. (*Id*.)

On May 25, 2009, Defendant Davis, still off-duty, approached Plaintiff Kristopher Delbridge. Defendant Davis used his government-owned firearm to threaten Plaintiff Kristopher Delbridge, ordering him to drop to his knees. Defendant Davis demanded that Plaintiff Kristopher Delbridge tell Defendant "where Dellano lives[.]" (Def.'s Mot. to Dismiss, Ex. 6, May 25, 2009 Police Report at 1.) Defendant then told Plaintiff Kristopher Delbridge to call Dellano. Plaintiff Kristopher Delbridge called Dellano's home using his cell phone and spoke to Dellano's mother. Plaintiff told Dellano's mother "that a man had a gun to his head and that he needed to talk to Dellano." (*Id*.) Dellano's mother said that Dellano was not home. Plaintiff Kristopher Delbridge then ended the call, and Defendant Davis left in his government-owned Chevrolet Tahoe.

While Plaintiff Kristopher Delbridge was traveling home after the encounter with Defendant

3

Davis, Plaintiff noticed that Defendant Davis was following the vehicle in which Plaintiff was traveling. When Plaintiff Kristopher Delbridge arrived at his home, Detroit Police officers detained Defendant Davis, but later released him pending further investigation.

On June 10, 2009, ICE relieved Defendant Davis of his law enforcement credentials, government-owned vehicle, and government-owned firearm. Defendant Davis was later arrested and charged with unlawful imprisonment, Mich. Comp. Laws § 750.349b, felonious assault, Mich. Comp. Laws § 750.82, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Following a jury trial, Defendant Davis was convicted on all three counts for the May 25, 2009 events involving Plaintiff Kristopher Delbridge, but acquitted of the same charges in relation to the May 23, 2009 events involving Keenan Delbridge. Defendant Davis was sentenced to concurrent prison terms of 2 to 15 years for the unlawful imprisonment conviction, 2 to 4 years for the felonious assault conviction, and 2 years for the felony-firearm conviction. On August 24, 2010, Defendant Davis was terminated, in part, because of his conduct on May 23 and 25, 2009.

## II. LEGAL STANDARD

Defendant has brought the instant motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Rule 12(b)(1) provides for dismissal of a claim for lack of subject-matter jurisdiction. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) (internal quotation marks omitted).

Where a factual dispute exists concerning subject-matter jurisdiction, "the court must make appropriate inquiry, and must satisfy itself on authority to entertain the case." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 918 (6th Cir. 1986). In reviewing a challenged to subject-matter jurisdiction pursuant to Rule 12(b)(1), "a court can and should *resolve* factual disputes." *Id*. (emphasis in original). The Court may rely on written or live evidence in determining a factual dispute concerning subject-matter jurisdiction, and the nonmoving party must "be afforded an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Id*.

Defendant also seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Under this rule, the Court "must construe the allegations of the complaint in the light most favorable to plaintiffs, accept all well-pled factual allegations as true, and decide whether the complaint contains sufficient facts to state a claim for relief that is plausible on its face." *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 597 (6th Cir. 2013).

### III. ANALYSIS

The Complaint contains six total counts. Only counts I-IV are asserted against Defendant United States. Those counts are: assault (Count I), battery (Count II), false imprisonment (Count III), and false arrest (Count IV). The remaining two claims, asserted only against Defendant Davis, are for violations of the Plaintiffs' Fourth Amendment rights, based on *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (Count V), and intentional infliction of emotional distress (Count VI).

Defendant United States raises two arguments in favor of dismissal: (1) Defendant Davis was not acting within the scope of his employment with ICE at the time of the alleged actions involving Plaintiffs, and (2) the alleged actions fall outside the FTCA's law enforcement exception for

5

intentional torts, because Defendant Davis was not in the course of executing a search, seizing evidence, or making an arrest when the alleged events occurred.

In its Supplemental Brief in Support of Its Motion to Dismiss, Defendant United States notes that the cases it relied on in making its second argument regarding the FTCA's law enforcement exception were overruled by the recent United States Supreme Court Opinion in *Millbrook v. United States*, 133 S.Ct. 1441 (2013). The Court held in that case "that the waiver effected by the law enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest." *Id*. at 1446. Defendant maintains, however, that dismissal is warranted based on its first argument.

## A. Scope of Employment Under the FTCA

"Under well-established and familiar principles of sovereign immunity, the United States may not be sued without its consent, and the terms of this consent define the jurisdiction of the courts to entertain a suit against the Government." *Stocker v. United States*, 705 F.3d 225, 230 (6th Cir. 2013). "The United States government has waived its sovereign immunity in limited contexts under the Federal Tort Claims Act . . . ." *Himes v. United States*, 645 F.3d 771, 776 (6th Cir. 2011). The Court therefore has jurisdiction, based on the FTCA waiver of sovereign immunity, over "actions on claims against the United States, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Accordingly, if Defendant Davis was not acting

within the scope of his employment with ICE, then this Court lacks jurisdiction over Plaintiffs' claims against the United States. *Flechsig v. United States*, 991 F.2d 300, 302 (6th Cir. 1993).

"[T]he determination of whether an employee of the United States acted within her scope of employment is a matter of state law." *Id*. Under Michigan law, acts within the "scope of employment" do not include actions "committed while on a frolic or detour, or after hours," or "torts intentionally or recklessly committed by an employee beyond the scope of his master's business." *Rogers v. J.B. Hunt Transport, Inc.*, 466 Mich. 645, 651 (2002) (citation omitted). In *Hamed v. Wayne County*, 490 Mich. 1 (2011), the Michigan Supreme Court explained:

> This Court has defined "within the scope of employment" to mean "'engaged in the service of his master, or while about his master's business.'" Independent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment. Although an act may be contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business.

*Id*. at 11 (citations and footnotes omitted). "The scope of employment issue is regarded as one of law, not fact." *Arbour v. Jenkins*, 903 F.2d 416, 422 (6th Cir. 1990).

Defendant United States argues that Defendant Davis was not acting within the scope of his employment with ICE during the events on May 23 and 25, 2009, because (1) Defendant Davis was off-duty at that time; (2) Defendant Davis was not enforcing immigration laws by "investigating" the robbery of his mother's home; (3) Defendant Davis was not routinely involved with investigations in his role as SDDO of the non-detained docket; and (4) Defendant Davis's use of his government-owned vehicle and firearm in connection with the May 23 and 25, 2009 events was not authorized by ICE policies. In support of its arguments, Defendant has produced the Declaration of Mark Pilat, the Deputy Field Office Director for Enforcement and Removal Operations in the

7

Detroit ICE Field Office. (Def.'s Mot. to Dismiss, Ex. 2.)

In response, Plaintiffs argue that the Court must accept the allegations in the Complaint as true, and that allegations that Defendant Davis was "acting in his capacity as an agent and employee of [ICE]" (Compl. ¶¶ 8, 10, 12, 13, and 16) are sufficient at this time. However, Plaintiffs' argument fails to address the Court's obligation to resolve factual disputes in ruling on a motion brought pursuant to Rule 12(b)(1). *See Rogers*, 798 F.2d at 918. Further, at the July 25, 2013 hearing, Plaintiffs' counsel admitted that he did not have a strong basis for disputing the facts set forth in the Pilat Declaration, and that he was willing to accept those facts for purposes of this motion.

Under Michigan law, Defendant Davis was acting outside of the scope of his employment with ICE on May 23 and 25, 2009. Even assuming that Defendant Davis could have been "engaged in the service of" ICE during off-duty hours, he was not furthering any ICE interest by "investigating" the robbery of his mother's home. It appears that Defendant Davis did have some limited investigatory authority in his position as a SDDO, including authority to interrogate individuals and make arrests. Nevertheless, this authority was limited to activities that furthered ICE's primary mission: "the criminal and civil enforcement of federal laws governing border control, customs, trade, and immigration." (Pilat Decl. ¶ 4.) There is no evidence that federal laws related to border control, customs, trade, or immigration were violated when Defendant Davis's mother's house was robbed. Defendant Davis's investigation of that robbery thus could not have furthered the interests of his employer, ICE. To the contrary, Defendant Davis was merely trying to recover his mother's stolen property when he engaged in the May 23 and 25, 2009 actions. He thus engaged in "[i]ndependent action, intended solely to further [Defendant Davis]'s individual interests, [which] cannot be fairly characterized as falling within the scope of employment." *Hamed*,

8

490 Mich. at 11.

Although not raised by Plaintiffs, Michigan law does recognize an exception to the general rule that an employer is not liable for acts of its employees outside the scope of its business: "an employer can be held liable for its employee's conduct if 'the employer "knew or should have known of [the] employee's *propensities and criminal record*"' before that employee committed an intentional tort." *Hamed*, 490 Mich. at 12 (citation omitted, emphasis in original). In this case, the record does reflect some past misconduct by Defendant Davis while he was employed with ICE. Specifically, Defendant Davis used "his government position to improperly allow an immigrant into the United States because [Davis] was involved in a sexual relationship with the immigrant's sponsor." (Def.'s Mot. to Dismiss, Ex. 7, Mich. Ct. of App. Decision at 2.) However, although it does involve abuse of Defendant Davis's position with ICE, this misconduct is different from the violent assault, battery, false arrest, and false imprisonment alleged in this case. Because there is no evidence that Defendant Davis participated in any prior similar conduct, there is no basis for the Court to find Defendant United States liable under the "known propensities" exception. *See Brown v. Brown*, 478 Mich. 545, 555 (2007) (noting that "an employer can assume that its employees will obey our criminal laws.").

Under Michigan law, Plaintiffs are foreclosed from arguing that Defendant United States is liable because Defendant Davis "purported to act or to speak on behalf of the [United States] and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation." Restatement (Second) of Agency § 219(2)(d) (1958). The Michigan Supreme Court expressly rejected employer liability based on "apparent authority" in *Zsigo v. Hurley Medical Center*, 475 Mich. 215 (2006). In that case, the Court concluded: "We

decline to adopt the [§ 219(2)(d)] exception, which would create employer liability for the torts of an employee acting outside the scope of his or her employment when the employee is aided in accomplishing the tort by the existence of the agency relationship." *Id.* at 231. Thus, to the extent that Plaintiffs argue that Defendant Davis was aided in carrying out the actions on May 23 and 25, 2009, through his employment with ICE, Plaintiffs' argument does not establish liability for Defendant United States under Michigan law.

The evidence thus reflects that Defendant Davis was not acting within the scope of his employment with ICE under Michigan law when he committed the alleged acts on May 23 and 25, 2009, which serve as the basis for the Complaint in this matter. Because he was not acting within the scope of his employment, the FTCA's waiver of sovereign immunity under 28 U.S.C. § 1346(b)(1) is inapplicable to Plaintiffs' claims against Defendant United States. Accordingly, this Court has no basis for jurisdiction over Plaintiffs' claims against Defendant United States. *Stocker*, 705 F.3d at 230; *Himes*, 645 F.3d at 776.

## IV. CONCLUSION

For the reasons stated above, the Court will:

(1) **GRANT** Defendant United States of America's Motion to Dismiss; and

(2) **DISMISS** Defendant United States of America for lack of subject-matter jurisdiction.

**SO ORDERED.**

                                                  s/Paul D. Borman
                                                  PAUL D. BORMAN
                                                  UNITED STATES DISTRICT COURT JUDGE

Dated: August 15, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 15, 2013.

                                        s/Deborah Tofil
                                        Case Manager